IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT "TY" KIMZEY,

Plaintiff,

vs.                                        Case No. 15-1369-JTM

DIVERSIFIED SERVICES, INC, *et al.*

Defendants.

MEMORANDUM AND ORDER

Both parties have submitted motions in limine in anticipation of the upcoming trial.

For the reasons identified herein, the court grants and denies the motions before the court.

**Defendants' Motion in Limine**

The defendants' Motion in Limine addresses 22 separate issues. (Dkt. 71, raising

internal Motions A-U). Unlike the plaintiff's Motion in Limine, discussed below, the motion

filed by the defendants is largely generic. In many instances, the motion raises purely

general issues of law or requests that counsel for the plaintiff be directed to follow clearly-

established law. In addition, the court notes that in many instances, the defendants' motion

rests on a citation to a Kansas court based upon the Kansas rules of evidence. With a few

exceptions (Motions A, B, C, F), most of defendants' generic objections take no note of any

specific evidence or circumstances in this case.

Courts look with disfavor on motions in limine "the gist of which is that the opposing party should be required to comply with the rules of evidence ... without identifying specific evidence which there is reason to believe may be introduced." *Graham v. Union Pacific R. Co.*, 2008 WL 4643292, *1 (E.D. Ark. Oct. 17, 2008). *See also Cantu Serv. v. Frazier*, 2016 WL 237067, *2 (W.D. La. Jan. 19, 2016) (denying motion in limine in the form of "a laundry list of broad and generic objections"). This court has expressed similar concerns:

> "A motion in limine is designed to prevent the interjection of specific evidence that is irrelevant, inadmissible, or prejudicial." *Hemetek v. United States*, 2012 WL 3870620, *9 (S.D.W.Va. 2012). Thus, such a motion "seeking to prohibit generic, unspecified 'prejudicial' testimony [is] not useful." *Id.* A motion in limine which "generally lacks specificity as to any particular evidence" is properly denied. *See United States v. DesFosses*, 2011 WL 4104702, *8 (D. Idaho 2011).

*United States v. Enns*, No. 15-10045-JTM, *1 (D. Kan. Dec. 14, 2005).

In their motion, the defendants ask the court to exclude or prohibit:

(A)   evidence of settlement negotiations,
(B)   any statements by the defendants of willingness to rehire Kimzey,
(C)   evidence of other former employees,
(D)   the defendant's insurance coverage,
(E)   the defendants' net worth,
(F)   any agreement among the parties as to what is or is not evidence;
(G)   evidence of any prior litigation involving the defendants;
(H)   demonstrative or physical evidence without prior approval;
(I)   plaintiff's counsel from asking questions of defense counsel;
(J)   golden rule arguments;
(K)   commenting on absent witnesses;
(L)   calling undisclosed witnesses;
(M)   any questions to a lay witness about the credibility of another,
(N)   use of documents not properly disclosed under Rule 26;
(O)   "send a message" jury arguments,

2

(P)   making any "personal criticisms" of defense counsel,
(Q)   arguments requesting that the jury "help" the plaintiff,
(R)   reliance on objections rendered during the course of discovery,
(S)   the personal opinions of plaintiff's counsel,
(T)   "any rulings or statements made by the Court" before trial or "any statements by counsel for Defendants" made outside the course of the evidence at trial,
(U)   discussion of taxes on any award to the plaintiff, or
(V)   the defendant's motion in limine.

The plaintiff agrees to, or at least does not oppose, Motions A, D, E, G, M, O, Q, R, U, and V. The court accordingly grants defendants' motion as to these issues.

The plaintiff agrees to Motions B and C "with qualification." (Dkt. 77, at 7). With regard to potential reinstatement, the plaintiff indicates that the parties have discussed this as a potential means of settling the case. Plaintiff's response states that he will not mention this unless defendants argue that Kimzey failed to reapply for employment, or that he could have been returned to work shortly after his termination. Plaintiff argues that in such event, he should be able to introduce evidence that the parties did not discuss the need for a formal reapplication, and that he did unsuccessfully seek reemployment several months after the end of his employment. The plaintiff contends that the dates of other employees' termination or reemployment may be referenced for purposes of establishing whether they were employed at the time of the events giving rise to this case, but agrees "not to argue that [such evidence] is evidence of retaliation." (Dkt. 77 at 3).

The defendants' motion is granted as to B and C, subject to these qualifications.

The plaintiff opposes the defendants' Motions F, H, I P, and S on the grounds that these objections "do not make sense" and are unsupported by any reference to federal law.

The court will deny the requested motions, the first of which asks the court to avoid

reference to matters as to what the parties have agreed is or is not evidence. The motion does not identify any specific agreements which have been reached, and demonstrates no substantial danger that plaintiff will falsely assert the existence of such agreements. The argument is purely generic, and is denied.

Next, in Motion H, defendants ask the court to prohibit plaintiff's counsel "from employing" demonstrative evidence or real physical evidence "in the presence of the jury" until it has been admitted. Defendants do not indicate that any evidence in the case is unusually prejudicial, and or which require extraordinary procedures for the introduction of evidence. The parties may request the admission of evidence in the presence of the jury, and publish it to the jury if it is admitted.

Motion I, which asks the court to prohibit plaintiff's counsel from asking questions of defense counsel "in front of the jury," is similarly unfounded. Defendants supply no authority supporting such an order, or provide any indication that plaintiff's counsel will likely employ such questions for anything beyond minor house-keeping matters.

Motion P seeks an order prohibiting plaintiff's counsel from making "personal criticisms" of defense counsel. The court anticipates that all counsel will behave professionally, and finds no reason for an explicit order directing that counsel comply with the rules of decorum.

Finally, Motion S seeks to exclude any reference to plaintiff's counsel's "personal opinions as to the justness of the Plaintiff's cause of action, or their feelings about the Defendants." (Dkt. 72 at 15). The court will deny this motion as unnecessary. The

4

authorities cited by the defendants— again, Kansas cases, not federal cases — do not support the relief requested by defendants: a blanket, pre-trial directive to refrain from improper argument. Rather, the both of the cited cases involve egregious misconduct by counsel, and advance the unremarkable proposition that counsel may not argue from facts which are not in evidence. See *Forsyth v. Church*, 141 Kan. 687, 689, 42 P.2d 975, 977 (1935); *Masson v. Kansas City Power & Light*, 7 Kan. App. 2d. 344, 649, 642 P.2d 113, 118 (1982). Defendants present no reason to assume plaintiffs counsel will engage in similar misconduct, and the motion is denied.[1] *See Fleck v. Douglass Roofing*, 2014 WL 11498048, *2 (D. Wy. Sept. 23, 2014) (declining in limine request to issue "a generic order to forbid Plaintiff from using vaguely defined language" as misleading or improper).

Motion J seeks to exclude "golden rule" arguments, citing *Walters v. Hitchcock*, 237

---

[1] In *Forsyth*, plaintiff's counsel "took a wide range, called witnesses liars, stating facts not in evidence, ridiculed witnesses, [including] witnesses [who] belonged to the "damnable association," the Pittsburg Clinic, "who are, "I think, one of the most highly organized 'robbing gangs' in the United States of America." 42 P.2d at 977.

*Masson* was a condemnation proceeding, which the court stressed is "'a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner.'" 642 P.2d at 117 (quoting *Sacramento, etc. Drainage Dist. ex rel. State Reclamation Bd. v. Reed*, 215 Cal.App.2d 60, 69, 29 Cal.Rptr. 847 (1963)). Thus, "there is no room for appeals to prejudice against the condemner or sympathy for the landowner." *Id.*. Counsel for the landowners, however, sought damages based in part on his client's subjective fear of power lines, based on "a *Reader's Digest* article on the dangers of electrical 'smog' and seeing a television movie 'Ohms' on the same subject." *Id.* at 115. In closing argument, counsel stressed the age of his client, stressed "the size and the money behind Kansas City Power and Light," referred to the condemnation as "rape," and after the case is over "hopefully ... you will have ... sent a message to a utility that you are not going to put up with the kind of treatment of your citizens." *Id.* at 117. The court held that it was improper for the counsel for the landowners to "deliberately" rely on improper argument by "depicting the landowners as helpless individuals fighting a rich and ruthless corporation, which should be penalized for its wrongful conduct." *Id.* at 116.

Kan. 31, 697 P.2d 847, 849 (1985). While Kansas law precludes argument asking jurors to

"place themselves in the position of a party, a victim, or the victim's family members," *id.*

at 33, federal law is different. "[T]his so-called Golden Rule argument is not improper

when urged on the issue of ultimate liability." *Cordova v. City of Albuquerque*, 816 F.3d 645,

660 (10th Cir. 2016) (citations and internal quotation omitted).

> Golden Rule appeals are most closely scrutinized in the context of awarding damages. *See Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 457 (10th Cir.1989) ('golden rule' references had no effect since court reversed and remanded damages awards on other grounds); *Schultz v. Rice*, 809 F.2d 643, 652 (10th Cir.1986) (rationale for prohibiting such argument is that jury sympathy will be unfairly aroused, resulting in disproportionate award of damages). Here, however, the trial is limited to defendants' liability, and does not include damages. Moreover, objections to statements that improperly play on the jury's personal interest or bias typically arise at trial in the context of a particular statement. The Court declines to exclude an entire category of statements in advance. Rather it will rule on such objections as they arise at trial in the context of specific statements.

*In re Motor Fuel Temperature Sales Practices Litig.*, No. 06-2582-KHV, 2012 WL 2505305, at *8

(D. Kan. June 28, 2012).

Here, plaintiff "agrees not to make a Golden Rule argument about damages." (Dkt.

77 at 5). The court grants defendants' Motion J as to damages, and denies it as to liability.

*See Rivera v. Volvo Cars of North America*, 2015 WL 11089502, *1 (D.N.M. July 23, 2015)

(denying in part motion in limine and holding "Plaintiff may, in closing argument, address

the 'Golden Rule' for purposes of liability").

Motion K seeks an order barring plaintiff from commenting on any absent witnesses,

6

citing Kansas decisions.[2] The plaintiff argues that federal law permits reference to a missing witness, citing *Wilson v. Merrell Dow Pharmaceuticals*, 893 F.2d 1149, 1152 (10th Cir. 1990).

In *Wilson*, the court determined that the trial court had not abused its discretion in declining to issue an instruction on inferences to be drawn from a missing witness.[3] However, while an explicit instruction was not required in *Wilson*, the court indicated that parties might still comment on the absence of a witness during argument:

> We thus conclude that the district court did not abuse its discretion in declining to give a missing witness instruction. Similarly, it was permissible for the district court to allow defense counsel's comment in closing argument that Dr. Say was equally available to testify for the Wilsons. When an absent witness is equally available to both parties, either party is open to the inference that the missing testimony would have been adverse to it. *See* 2 J. Wigmore, *supra*, at § 288, at 208 & n. 4 (listing cases supporting the "more logical view ... that the failure to produce [a witness equally available to both

---

[2] *Spraker v. Lankin*, 218 Kan. 609, 615, 545 P.2d 352, 357 (1976); *Borth v. Borth*, 221 Kan. 494, 497, 561 P.2d 408, 411 (1977); *Skelly Oil Co. v. Urban Renewal Agency of City of Topeka*, 211 Kan. 804, 807, 508 P.2d 954, 957 (1973).

[3] The court separately set forth, 893 F.2d at 1150-51, the standards for the issuance of an explicit instruction on the inferences to be drawn from the failure to call a witness:

> Courts have recognized four factors that must be present before a jury can be instructed to infer that a missing witness would have testified adversely to a party: (1) the party must have the power to produce the witness, *see, e.g.*, [*United States v.*] *Sutton*, 732 F.2d [1483,] 1492 [10th Cir. 1984)]; 2 J. Wigmore, Evidence in Trials at Common Law § 286 (J. Chadbourn rev.ed. 1979 & Supp.1989); (2) the witness must not be one who would ordinarily be expected to be biased against the party, *see id.* § 287, at 202 & n. 1; (3) the witness's testimony must not be "comparatively unimportant, or cumulative, or inferior to what is already utilized" in the trial, *see id.* § 287, at 202–03 (emphasis omitted); and (4) the witness must not be equally available to testify for either side, *see, e.g., Sutton*, 732 F.2d at 1492; *Quad Constr., Inc. v. William A. Smith Contracting Co.*, 534 F.2d 1391, 1394 (10th Cir.1976); 2 J. Wigmore, *supra*, at § 288.3 The party requesting a missing witness instruction adverse to the other side has the burden to demonstrate that these criteria are satisfied. *See, e.g., Sutton*, 732 F.2d at 1492 (criminal defendant has burden to show that there are missing government witnesses); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 659–60 (11th Cir.1988) (requesting party must establish that potential witness is unavailable and that potential testimony is relevant and noncumulative.

sides] is open to an inference *against both parties*, the particular strength of the inference against either depending on the circumstances") (emphasis in original). In these circumstances, comment by both sides in closing argument regarding the missing witness is appropriate. *See* C. McCormick, McCormick's Handbook of the Law of Evidence § 272, at 657–58 (E. Cleary ed. 1972). If one side makes "an argument on failure to produce [a witness that] is fallacious, the remedy is the usual one, namely the answering argument and the jury's good sense." *Id*. § 272, at 659.

893 F.2d 1149.

The court hereby denies the defendants' Motion K.

Motion L asks the court to bar the use of any previously undisclosed witnesses. The plaintiff notes in his response that the defendants' cited authority, *West v. Martin*, 11 Kan.App. 2d 55, 713 P.2d 957 (1986), is not only a Kansas decision which is not controlling here, but the court in fact concluded that the trial court had erred in refusing to permit the expert testimony of a medical expert.[4]

While defendants' motion does rest on citation to state law, the court retains the power under Rule 37(c)(1) to enforce the failure to give proper disclosure under Rule 26. And while the defendants' motion is generic in nature, the plaintiff's response is equally so — even though it is plaintiff who should know if he intends to call any undisclosed witnesses.

A party who fails to properly make a disclosure in violation of Rule

---

[4] The trial court excluded the expert, Dr. Ernest Neighbor, on the grounds that he had not been identified explicitly in pretrial disclosures. The Court of Appeals found that while the plaintiff's interrogatory response "leaves a lot to be desired," the plaintiff had nonetheless indicated that it planned to call "Dr. Ernest H. Neighbors, [sic ] M.D." as a witness, and otherwise gave sufficient information that "Defendant was obviously not deceived." 11 Kan.App.2d at 58. The court observed that "[a] trial judge has discretion in this area," but given the defendant's knowledge, exclusion of the testimony was erroneous. *Id*.

26 may not use at trial any witnesses or information that was not disclosed, unless the court determines that the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The non-moving party has the burden of showing that it was substantially justified in failing to comply with Rule 26(a) or that such failure was harmless. *See Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004). The Tenth Circuit has identified four factors the Court should consider to guide its discretion in determining whether a Rule 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citations omitted); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

*White v. Deere and Co.*, 2016 WL 525911, *1 (D. Col. Feb. 10, 2016).

The court hereby grants Motion L. To the extent plaintiff wishes to call previously undisclosed witnesses, he must obtain prior leave outside the presence of the jury.

In Motion N, the defendants seek to bar the use of documents not properly disclosed under Rule 26 pursuant to Rule 37(c)(1). The plaintiff opposes the motion in a footnote, which merely states that the request "is unnecessary," but otherwise provides no argument or explanation. (Dkt. 77, at 1 n. 3). The court grants Motion N. To the extent any party wishes to present undisclosed documents, they must obtain prior approval of the court outside the presence of the jury.

Finally, in Motion T, the defendants ask that the court prohibit any reference to "any rulings or statements made by the Court" before trial or "any statements by counsel for Defendants" made outside the course of the evidence at trial. Defendants cite no authority for the motion. The plaintiff does not address the request to preclude reference

9

to comments by the court, but opposes the request to bar reference to comments by counsel as "too broad," because it might include "the pretrial order, requests for admission, stipulations, discovery responses and other statements by counsel in its representation of Defendants." (Dkt. 77 at 6).

The court hereby grants Motion T, except as to any stipulations or responses to requests for admissions.

**Plaintiff's Motion in Limine**

The court grants as unopposed plaintiff's motions to exclude reference to the reason for his prior FMLA leave (Motion 4)[5] or any demand letters or settlement negotiations (Motion 8).

The court grants, over defendants' objection, plaintiff's motion to exclude (Motion 5) comments attributed to Kimzey at a wedding which occurred several months after his termination. The plaintiff seeks to exclude evidence from Crouch that he understood Kimzey to have stated at the wedding that he "had the best lawyer in Kansas," and otherwise expected to win the present lawsuit. The defendants argue that the evidence is relevant because it supports its contention that the plaintiff "was financially motivated and may have intentionally disrupted the workplace" by deliberating attempting to "rile up

---

[5] Defendants do argue in their Response (Dkt. 78, at 4) that the fact of the earlier FMLA leave should be admissible, as it tends to diminish an inference of intent, but agrees not to reference the reason for the leave, which was low testosterone. Plaintiff's original motion (Dkt. 70, at 3-4) narrowly targets "[t]he personal medical reason for his leave," and the motion is granted on this basis.

Crouch" in their final conversation, and "[w]hen that did not work, [he] voluntarily terminated himself." (Dkt. 78, at 11).

The defendants may be able to argue this view of the case based on other evidence, but the wedding comments provide no support for it. The comments attributed to Kimzey at the wedding are the sort of comments which might be made by any litigant who is confident of the rightness of his or her cause. Accordingly, the wedding comments are probative of nothing, and properly excluded.

With respect to the remaining arguments advanced by plaintiff, the court will first deny the request to exclude matters relating to his employment or disciplinary history (Motion 1). The cases cited by plaintiff do not support a different conclusion. In *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1115 (10th Cir. Kan. 2005), the parties had explicitly stipulated that "[i]n terminating [Mr. Miller's] employment, no consideration of any kind was given to [his] past performance." The defendant subsequently attempted to introduce evidence of prior performance in order to combat, it argued, evidence of pretext suggested by an EEOC letter which was introduced into evidence. The Tenth Circuit simply held that it was not an abuse of discretion for the district court to enforce the explicit stipulation, which "was voluntarily entered into by both parties for strategic reasons." *Id.* at 1116. No such stipulation exists here.

The other cases cited by plaintiff are equally distinguishable. For example, in *Hood v. Hawker Beechcraft*, No. 2011 WL 884459, (D. Kan. March 11, 2011), Judge Belot excluded evidence of the quality of plaintiff's job performance, since the defendant claimed to have

11

terminated the plaintiff for attendance reasons. As a result, "[t]he only records which are relevant to the case are plaintiff's attendance, her Step 1, 2, and 3 violations for attendance and her FMLA history." *Id.* at *1. Here, defendants disputes any retaliatory intent, argues that Crouch in fact bent over backwards to accommodate a marginal employee, and that the plaintiff in fact voluntarily resigned from his employment. The plaintiff's employment history is directly relevant to these contentions.

The plaintiff also seeks to exclude (Motion 2) evidence in support of the following contention advanced in the Pretrial Order:

> Plaintiff's co-workers, including Brooke Gerten, Cheryl Holladay, Duane Baker, and Robbie Sexton, claim that Dale Crouch was too nice when it came to Plaintiff's job performance and absenteeism and expressed frustration that Plaintiff took advantage of Crouch as a supervisor.

(Dkt. 70, at 3). The plaintiff contends that the fact his co-workers believe that Crouch "is a swell and patient guy is just not relevant" to the issues in the case. (Dkt. 70, at 3). This incorrectly summarizes the cited evidence, which was not generic character evidence that Crouch was "swell" in some abstract sense, but directly relates to the perception that Crouch acted fairly towards Kimzey specifically "when it came to Plaintiff's job performance and absenteeism." The evidence of Crouch's historical treatment of Kimzey is relevant to his treatment of Kimzey in June of 2015, and the evidence is admissible.[6]

The plaintiff's request to exclude (Motion 3) evidence that would support the

---

[6] Plaintiff's motion also notes that "[i]n addition, Gerten, Holladay, Baker and Sexton are not listed as witnesses on any of Defendants' witness disclosure." (Dkt. 70, at 3). The defendant's Response to the motion in limine (Dkt. 78, at 8-9) does not address the failure to identify these persons as witnesses. The witnesses accordingly will be excluded absent good cause shown by the defendants.

contention, made in defendant's summary judgment motion, that the "[p]laintiff stated that Crouch was a 'fair' supervisor, did not treat him differently from other employees, and often give him pay advances" (Dkt. 70, at 3). The plaintiff offers no support for the request other than a simple assertion that the evidence "is irrelevant to the issues at hand." *Id.* But the underlying motive for Crouch's actions is a key issue in the case, and his historical treatment of the plaintiff, as expressed in plaintiff's own statements, is probative of that issue.

In Motion 6, the plaintiff seeks to exclude certain correspondence he sent to his supervisors. In these letters, the plaintiff asked for promotion to lead, for pay raises, and about his disagreements with management about how employees were trained. The letters were submitted some time before his termination. On the other hand, a central issue of the case is whether defendants acted with a retaliatory intent in terminating plaintiffs employment. Evidence that the defendants cooperated with Kimzey's requests and accommodated his complaints has a natural tendency to diminish any inference of wrongful intent. The court denies Motion 6.

Finally, plaintiff seeks to exclude argument relating to his recitation of the final meeting with Crouch. (Motion 7.) On June 19, 2015, Kimzey prepared a statement to the KDOL in which he explained in detail the events surrounding his termination, and includes an explicit quote attributed to Crouch in response to his suggestion that he was thinking of putting in his two week notice. According to the June 19 charge, Crouch responded: "after all your shit?" After the KDOL denied the charge, Kimzey submitted a statement

indicating that he was represented by counsel, and also includes a factual narrative which changes Crouch's alleged comment to: "After I put up with all your FMLA crap?"

The only authority Kimzey cites in support of exclusion, *Carlyle v. Lai*, 783 S.W.2d 925, 929-30 (Mo.App. 1989), is plainly distinguishable. Carlyle was a wrongful death case, in which the trial court allowed the defendant to inquire as to when the decedent's mother contacted an attorney. The Missouri Court of Appeals held the questioning was error, stressing that there was no valid purpose for it other than the creation of prejudice: "The questions ... regarding when Ms. Kramer hired plaintiffs' attorney ... were asked to discredit the plaintiffs as avaricious because they sought the services of a lawyer soon after their son's death." *Id.* at 929-930.

In the present case, the cited argument or evidence does not involve a gratuitous reference to hiring an attorney, or a suggestion of unnatural avarice. As noted in the prior summary judgment order, what occurred during the conversation between Crouch and Kimzey is the central issue in the case. As to that central issue, Kimzey's statements as to what happened is highly relevant. That Kimzey, within a short period of time, substantially altered his quoted language for a pivotal comment by his supervisor renders his version of events subject to reasonable questions of credibility.

IT IS ACCORDINGLY ORDERED this 13th day of January, 2017, that the plaintiff and defendants' Motions in Limine (Dkt. 71, 74) are granted in part and denied in part as provided herein.

                                                     s/ J. Thomas Marten
                                            J. THOMAS MARTEN, JUDGE